**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DILLON SIMS, individually and on behalf of all others similarly situated,

Plaintiff,

5:25-cv-1554 (ECC/ML)

v.

RICCELLI HOLDINGS, INC., RICCELLI ENTERPRISES INC., RICCELLI ENTERPRISES, LLC, and RICCELLI NORTHERN, LLC,

Defendants.

---

Carter T. Hastings, Esq., *for Plaintiff*
Ross M. Greenky, Esq., *for Defendants*

**Hon. Elizabeth C. Coombe, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

Plaintiff Dillon Sims, suing individually and on behalf of all others similarly situated, brings this action against Defendants Riccelli Holdings, Inc., Riccelli Enterprises Inc., Riccelli Enterprises, LLC, and Riccelli Northern, LLC alleging violations of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 et seq., and the New York Labor Law. Dkt. No. 1. Presently before the Court is Plaintiff's motion for conditional certification and notice to putative collective members under the FLSA. Dkt. No. 30. The motion is fully briefed. Dkt. Nos. 35, 37, 42. For the following reasons, Plaintiff's motion is granted in part.

## I. BACKGROUND

Plaintiff filed an "Original Collective/Class Action Complaint" on November 3, 2025. Dkt. No. 1. Plaintiff alleges that Defendants are "joint employers" who have "common ownership, oversight and control over Plaintiff and the Putative Collective/Class Members." *Id.* at ¶ 22.

Defendants "provide[] transportation, mining and material handling services to the construction industry throughout the Northeastern United States." *Id.* at ¶ 29. As relevant to this motion, Plaintiff alleges that he and other putative collective members employed by Defendants were subject to a "regular practice" by which Defendants would "deduct a 30-minute meal-period from [their] wages for a meal break they did not receive." *Id.* at ¶ 6. This deduction resulted in Plaintiff and the putative collective members "working straight time hours and overtime hours for which they were [] not compensated" at the rates required by the FLSA. *Id.* at ¶ 71.

To date, seventeen individuals in addition to Plaintiff have consented to opt-in to a FLSA collective action. *See* Dkt. Nos. 12, 21, 28, 36, 40-41, 43-45, 48, 52.

In support of the motion to conditionally certify a FLSA collective, Plaintiff submitted declarations from himself and seven other former and current employees of Defendants. Seven of the eight declarants worked for Defendants as "Dump Truck Driver[s]" and were paid by the hour. *See* Dkt. No. 30-2 ¶ 5 (Dillon Sims Decl.); Dkt. No. 30-4 ¶ 5 (Andrew Feather Decl.); Dkt. No. 30-5 ¶ 5 (Joshua Muters Decl.); Dkt. No. 30-6 ¶ 5 (Eric Sheffield Decl.); Dkt. No. 30-7 ¶ 5 (Joseph David Decl.); Dkt. No. 30-8 ¶ 5 (Aaron Muckey Jr. Decl.); Dkt. No. 30-9 ¶ 5 (Devon Thomason Decl.). The eighth declarant, Glenn Centore, asserts that he worked for Defendants as an hourly "Mixer Driver." Dkt. No. 30-9 ¶ 5. Mr. Centore and Mr. David assert that they worked at Defendants' Rome, New York facility; Mr. Feather asserts that he works at Defendants' Syracuse and Fulton, New York facilities; and the other five declarants assert that they worked at Defendants' Syracuse, New York facility. Dkt. Nos. 30-2–30-9 ¶ 2. Their duties "included driving [their] truck[s] and picking up and dropping off construction materials such as aggregates or ready mix on behalf of Defendants and/or their clients." Dkt. Nos. 30-2–30-9 ¶ 6.

According to the declarants, Defendants "automatically deducted a thirty-minute meal period from [their] daily hours, even though [they] regularly worked through [their] meal period on Defendants and their clients' behalf." Dkt. Nos. 30-2–30-9 ¶ 9. They assert that Defendants "were aware" that they did not take their meal breaks because they complained to their manager or dispatch and because, if they "tried to stop for a meal break, dispatch would call" and "tell [them] to get moving if [they were] stopped for more than ten minutes." *See* Dkt. Nos. 30-2–30-9 ¶ 13; *see* Dkt. No. 30-2 ¶ 13 ("This happened on a few occasions when I stopped and dispatch would call me over the open Riccelli radio and tell me to not stop and keep moving."). These eight individuals also state that their "fellow hourly employees had the same routine . . . and either ate while working or did not take a meal break at all." Dkt. Nos. 30-2–30-9 ¶ 11. The co-workers talked "on a regular basis about this issue." *Id.*

In opposition to Plaintiff's motion, Defendants submitted the declaration of Richard Riccelli Sr., the President and Chief Executive Officer of Riccelli Enterprises, Inc. and Northern Ready Mix, LLC. Dkt. No. 37-1. According to Mr. Riccelli, Riccelli Enterprises, Inc. "is the only entity named in this action that employs any individuals, let alone drivers." *Id.* at ¶ 4. Mr. Riccelli further asserts that Mr. Centore "did not work for any of the named parties in this action" during the relevant time period and instead "worked exclusively for Northern Ready Mix, LLC." *Id.* at ¶ 3.

## II. LEGAL STANDARD

Section 216(b) of the FLSA authorizes employees to bring so-called "collective" actions through which "employees seeking to recover under FLSA's substantive provisions may assert claims on behalf of other 'similarly situated' employees." *Myers v. Hertz Corp.*, 624 F.3d 537, 542 (2d Cir. 2010); *see* 29 U.S.C. § 216(b) (providing that an action "may be maintained" by "any one or more employees for and in behalf of himself or themselves and other employees similarly

situated"). Unlike with traditional class actions under Federal Rule of Civil Procedure 23, "plaintiffs in FLSA representative actions must affirmatively 'opt in' to be part of the class and to be bound by any judgment." *Myers*, 624 F.3d at 542 (citations omitted).

The Second Circuit has "endorsed" a two-step process for "certifying" FLSA collective actions. *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016). "At step one, the district court permits a notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law." *Id.* (citing *Myers*, 624 F.2d at 555). At step two, after "additional factual development," the district court "determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs." *Id.* The "action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Myers*, 624 F.3d at 555.

Plaintiff's motion for "conditional certification and notice to putative collective members" implicates step one of this process. The "certification" referred to here "is only the district court's exercise of the discretionary power, upheld in *Hoffman-La Roche* [*Inc. v. Sperling*, 493 U.S. 165 (1989)], to facilitate the sending of notice to potential class members." *Id.* at 555 n.10; *see also Glatt*, 811 F.3d at 540 (noting that a "conditionally certified FLSA collective does not acquire an independent legal status"). The named plaintiff must make "some showing that 'there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions.'" *Myers*, 624 F.3d at 555 (citation omitted). The "'modest factual showing' cannot be satisfied by 'unsupported assertions'" but "should remain a low standard of proof because the purpose of this first stage is merely to demonstrate *whether* 'similarly situated' plaintiffs do in fact exist." *Id.* Plaintiffs may satisfy this requirement "by relying on their own

pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Davella v. Ellis Hosp., Inc.*, No. 1:20-cv-726 (MAD/ATB), 2023 WL 5367791, at *3 (N.D.N.Y. Aug. 21, 2023) (citation omitted).

In deciding a motion for conditional certification, the Court "does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Robbins v. Premier Senior Living, LLC*, No. 5:21-cv-1164 (AMN/ML), 2023 WL 7181678, at *2 (N.D.N.Y. Apr. 26, 2023) (citation omitted). If the named plaintiffs and opt-in plaintiffs "share legal or factual similarities material to the disposition of their claims, dissimilarities in other respects should not defeat collective treatment." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 516 (2d Cir. 2020) (citation and internal quotation marks omitted).

## III. DISCUSSION

### A. Conditional FLSA Certification

As set forth below, the Court concludes that conditional certification of a collective under FLSA Section 216(b) is warranted, but with a scope greatly reduced from Plaintiff's initial request.

Plaintiff moved for conditional certification and notice to putative members of a collective defined as

> all current and former drivers who worked for Riccelli Holdings, Inc., Riccelli Enterprises, Inc., Riccelli Enterprises, LLC, and Riccelli Northern, LLC anywhere in the United States in the past three years through the present.

Dkt. No. 30 (bold formatting omitted).[1] Plaintiff's motion identifies two allegedly unlawful common policies or plans to which he and others were subject: the automatic deduction of a 30-

[1] Plaintiff's memorandum of law defines the putative collective slightly differently. *See* Dkt. No. 35 at 12. Unless otherwise noted, citations to page numbers refer to the pagination generated by the CM/ECF system.

minute meal break that Plaintiff and the other putative collective members "rarely, if ever, took" and the failure to include a non-discretionary sign-on bonus in their regular rate when calculating and paying their overtime. *See* Dkt. No. 35 at 2. In his reply memorandum of law, Plaintiff states that "for purposes of the issuance of notice" he "focuses [only] on the automatic meal-break deduction policy." Dkt. No. 42 at 2 n.2. The Court therefore limits its analysis in the first instance to whether Plaintiff has made a modest factual showing that he is similarly situated to other drivers relative to the alleged automatic meal-break deduction.

First, Plaintiff has not met his burden of showing that he is similarly situated to any Riccelli employees other than "Dump Truck Drivers." With one exception, all the individuals who submitted declarations in support of Plaintiff's motion assert that they worked for Defendants as "Dump Truck Driver[s]." Dkt. Nos. 30-2, 30-4–30-9 ¶ 5. Mr. Centore, in turn, states that he worked as a "Mixer Driver." Dkt. No. 30-3 ¶ 5.[2] But nothing in Plaintiff's submissions explains what the "Mixer Driver" position entails or alleges that mixer drivers other than Mr. Centore were also "victims of a common policy or plan that violated the law." *Glatt*, 811 F.3d at 540; *see Tay v. N.Y. & Presbyterian Hosp.*, No. 22-cv-8379, 2024 WL 4286226, at *16 (S.D.N.Y. Sept. 24, 2024) (limiting scope of collective to certain specified positions where there was "no showing that *all* hourly workers employed by Defendant are similarly situated") (internal quotation marks and citation omitted). Mr. Centore's assertion that his "fellow hourly employees had the same routine" is too conclusory. Dkt. No. 30-3 ¶ 11. Thus, any conditionally certified collective will be limited to "Dump Truck Drivers" employed by Defendants.

[2] For purposes of this motion, the Court accepts as true Mr. Centore's disputed assertion that he was employed by Defendants. Dkt. No. 30-3 ¶ 2.

As a second threshold matter, Plaintiff has not made the modest factual showing required to certify a companywide or nationwide collective. Six of the declarants supporting Plaintiff's motion assert that they worked at Defendants' Syracuse, New York facility, one declarant asserts that he also worked at the Fulton, New York facility, and two declarants assert that they worked at the Rome, New York facility. Dkt. Nos. 30-2–30-9 ¶ 2. Accordingly, any conditionally certified collective will be limited to Defendants' Syracuse, Fulton, and Rome facilities. *See Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 457-58 (E.D.N.Y. 2014) (limiting conditional certification to two store locations and declining to include all employees in New York where declarant's "general assertions that it was routine for [employees] to work off-the-clock 'in every store' [wer]e too conclusory . . . absent factual details of which stores he is referring to and the basis for his knowledge"); *Anjum v. J.C. Penney Co.*, No. 13-cv-460, 2015 WL 3603973, at *8-9 (E.D.N.Y. June 5, 2015) (limiting scope of collective to employees at two retail locations where plaintiffs did not demonstrate they were similarly situated to sales associates who worked at all retail stores in New York).

So limited, the Court concludes that Plaintiff has made the modest factual showing necessary to demonstrate that Plaintiff and other potential plaintiffs who worked as dump truck drivers at Defendants' Syracuse, Fulton, and Rome facilities were "victims of a common policy or plan that violated the law." *Glatt*, 811 F.3d at 540. Although "an automatic meal deduction, alone, is not 'a common violation of law' sufficient to 'bind the purported collective action,'" a modest factual showing that employees were "routinely working through or during scheduled meal breaks, without compensation, and with [the employer's] knowledge" is sufficient. *See Tay*, 2024 WL 4286226, at *11 (brackets and citations omitted).

Here, Plaintiff and six other dump truck drivers all assert that Defendants automatically deducted a thirty-minute meal period from their daily hours, that they regularly worked through their meal periods, and that Defendants knew that the dump truck drivers "either routinely worked through lunch or did not take a meal break at all." *See* Dkt. Nos. 30-2–30-9 ¶¶ 9-13. The declarants assert that if they "tried to stop for a break, dispatch would call [them] and tell [them] to get moving if [they were] stopped for more than ten minutes." *See* Dkt. Nos. 30-2, 30-4–30-9 ¶ 13; Dkt. No. 30-2 ¶ 13 ("This happened on a few occasions where I stopped and dispatch would call me over the open Riccelli radio and tell me to not stop and keep moving."). Plaintiff further declares that he "told [his] manager [he] didn't take a break." Dkt. No. 30-2 ¶ 13; *see also* Dkt. No. 30-5 ¶ 13 (Mr. Sheffield declaring that he "complained to [his] manager and dispatch about not having time for a break"); Dkt. No. 30-6 ¶ 13 (same). These dump truck drivers also state that their fellow drivers had the same routine and that they "talked to [their] fellow co-workers on a regular basis about this issue." *E.g.*, Dkt. No. 30-2 ¶ 11.

In opposition to conditional certification, Defendants primarily argue that Plaintiff has not met even his modest burden of showing a common practice because his motion is supported only by "unsupported assertions and conclusory allegations." Dkt. No. 37 at 5, 7-12. Defendants criticize Plaintiff's declaration for failing to specify how he knows his co-workers were also subject to an automatic meal-break deduction or provide any details about conversations with other employees. *Id.* at 7-9. Although Plaintiff's declaration does not contain great detail, Plaintiff's motion is supported by the declarations of eight individuals, not just Plaintiff's. Dkt. Nos. 30-2–30-9. The Court concludes that, taken together, these eight declarations satisfy Plaintiff's minimal burden of showing that dump truck drivers at three of Defendants' facilities were subject to the alleged common unlawful policy.

Finally, the Court must define the temporal scope of the conditionally certified collective. Plaintiff variously requests that notice be sent to qualifying employees who were employed by Defendants "in the past three years through the present," Dkt. No. 30 at 1, or "at any time from November 3, 2022, through the final disposition of this matter," Dkt. No. 35 at 12. However, the notice period "generally should be measured from the date of the court's order granting the motion for conditional certification, not from the date that the complaint was filed." *Ritz v. Mike Rory Corp.*, No. 12-cv-367, 2013 WL 1799974, at *3 (E.D.N.Y. Apr. 30, 2013) (citation omitted); *see also* 29 U.S.C. § 256 (providing that an FLSA action "shall be considered to be commenced in the case of any individual claimant" who opts in to a collective action "on the subsequent date on which such written consent is filed in the court in which the action was commenced"). Accordingly, the notice being authorized here will be directed to potential opt-in plaintiffs who worked for Defendants during the three years preceding the date of this order.

Based on the foregoing, the Court conditionally certifies and will authorize notice to be sent to the collective consisting of:

> all Dump Truck Drivers who worked for Riccelli Holdings, Inc., Riccelli Enterprises, Inc., Riccelli Enterprises, LLC, and Riccelli Northern, LLC at their Syracuse, Fulton, and Rome, New York facilities in the three years preceding the date of this Order and who were subject to the automatic meal break deduction.

### B. Court-Authorized Notice

Plaintiff requests that he be allowed to send a Court-authorized notice to potential collective members by U.S. mail, email, and text message, and that Defendants be required to post the notice at its work sites "in a conspicuous location near the time clock." Dkt. No. 35 at 10, 12. Plaintiff seeks to send the notice at the beginning of a sixty-day opt-in period and to send a reminder notice thirty days prior to the end of the opt-in period. Dkt. Nos. 30; 35 at 11, 12.

Defendants object to sending the notice by text message and any requirement for a workplace posting. Dkt. No. 37 at 13-14.

### 1. Method and Timing of Distribution

Defendants argue that Plaintiff's request for telephone numbers is "improper" and that, for "privacy reasons, production of the telephone numbers should be considered only if the named plaintiff demonstrates that less intrusive contact information (i.e., name and mailing address) is insufficient to locate potential collective action members." Dkt. No. 37 at 13 (citation omitted). Plaintiff replies that the issuance of notice via text message should be authorized because Plaintiff and the other declarants assert that they regularly communicated with Defendants using their personal cell phones and know that Defendants have experienced a high turnover rate. Dkt. No. 42 at 7-8.

The Court will authorize dissemination of the notice by regular mail. Some courts in this Circuit have expressed concern about email notice, because "electronic communication inherently has the potential to be copied and forwarded to other people . . . with commentary that could distort the notice approved by the Court." *Spack v. TransWorld Ent. Corp.*, No. 17-cv-1335 (TJM/CFH), 2019 WL 192344, at *14-15 (N.D.N.Y. Jan. 1, 2019) (citation omitted). Further, Plaintiff has made no showing that distribution by regular mail is likely to be unsuccessful for a significant number of potential opt-in plaintiffs. *See id.* at *15. The Court thus finds that dissemination of the notice via email is not necessary at this stage.[3]

Sending a notice via text message is most commonly approved where the "nature of the employer's business facilitates a high turnover rate among employees." *Davella*, 2023 WL

[3] For similar reasons, the Court denies Plaintiff's request, raised in a footnote, that potential collective members be given the option to execute their consent forms online through an electronic signature service. Dkt. No. 35 at 10 n.6.

5367791, at *8 (brackets and citation omitted). Courts have declined to approve text message notice "where the plaintiff fails to 'sufficiently demonstrate[] that turnover and relocation by potential members of the collective [would] render mailed notice ineffective." *Id.* (citation omitted); *see also Mikityuk v. Cision US Inc.*, No. 21-cv-510, 2021 WL 1750370, at *9 (S.D.N.Y. May 4, 2021) (declining to authorize text message notice where the plaintiffs made "no argument" that "turnover is such that text messaging is required or appropriate"). Here, although the declarations in support of Plaintiff's motion assert that Defendants experience a high turnover rate, Plaintiff has not made a showing that any turnover or relocation by potential members of the collective would render mailed notice ineffective, and the Court therefore declines to authorize dissemination of the notice via text message.

Last, Plaintiff requests that Defendants be required to post the notice at its work sites in a "conspicuous location near the time clock." Dkt. No. 35 at 10. Defendants oppose this request given Plaintiff's failure to show that "a significant number of notices will be returned as undeliverable." Dkt. No. 37 at 13-14. Here, where there has been "no suggestion that there will be any problem reaching current employees through mail," where the collective has been limited to the position of dump truck drivers only, and in recognition of the "potential disruption that can occur in the employer-employee relationship when an employer is required to post a notice in the workplace announcing that one or more employees have accused it of violating the law," the Court denies Plaintiff's request for a workplace notice. *See Knox v. John Varvatos Enters. Inc.*, 282 F. Supp. 3d 644, 667-68 (S.D.N.Y. 2017).

Accordingly, Plaintiff may disseminate the notice to potential collective members via first-class mail. The Court approves of the requested sixty-day opt-in period. The Court further

authorizes a reminder notice to be sent to potential collective members who have not yet returned a signed opt-in consent form in this case thirty days after notice is initially sent.

### 2. Disclosure of Potential Collective Members' Information

Plaintiff requests that Defendants be ordered to provide "a list, in electronic and importable format, of the names, dates of employment, positions of employment, locations of employment, last-known mailing addresses, last-known cell phone numbers, and e-mail addresses of all Putative Collective Members who worked for Riccelli during the Relevant Time Period." Dkt. No. 35 at 12. Because the Court authorizes dissemination of the notice by mail, Defendants are directed to provide in electronic format the names and last-known mailing addresses of individuals falling within the scope of the conditionally certified collective. Plaintiff will know that the individuals identified worked as dump truck drivers at Defendants' Syracuse, Fulton, and/or Rome facilities. The Court declines to order Defendants to produce the remainder of the information requested at this time, as it is not necessary to contact the potential plaintiffs. *See Spack*, 2019 WL 192344, at *10 (noting that email addresses are generally not publicly available); *Iriarte v. Café 71, Inc.*, No. 15-cv-3217, 2015 WL 8900875, at *6 (S.D.N.Y. Dec. 11, 2015) (declining to order defendants to produce certain personal information and noting that the plaintiff "suggest[ed] no reason why he requires all this information in order to send § 216(b) notice").

### 3. Content of the Notice

Plaintiff submitted a proposed "Notice of Collective Action Lawsuit" and "Consent to Join Wage Claim Against Riccelli" form with his motion. Dkt. No. 30-11. Defendants object to Plaintiff's proposed notice on the grounds that it is overbroad and not neutral. Dkt. No. 37 at 14-15. The parties are directed to meet and confer to attempt to reach agreement as to the form and

content of a proposed notice in light of the Court's rulings.[4] The parties are directed to submit the agreed-to proposal, or three-page letter briefs attaching their competing proposals if they are unable to agree, by November 10, 2026.

## IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion for conditional certification, Dkt. No. 30, is **GRANTED in part** as set forth in this Memorandum-Decision and Order; and it is further

**ORDERED** that the issuance of notice to the collective, once approved by the Court, is authorized, limited as set forth in this Memorandum-Decision and Order; and it is further

**ORDERED** that within twenty-one (21) days of this Decision, Defendants shall produce in electronic format the names and last known mailing addresses for all dump truck drivers employed by Defendants from October 20, 2023 to the date of this Decision; and it is further

**ORDERED** that the parties meet and confer regarding the particular form and substance of the notice, consistent with this Decision, and submit the proposal, or three-page letter briefs attaching their competing proposals if the parties are unable to agree, by November 10, 2026.

**IT IS SO ORDERED.**

Dated: October 20, 2026

Elizabeth C. Coombe
U.S. District Judge

[4] The parties are referred to the Court-approved notice in another, similar action filed by Plaintiff. *See Sims v. Syracuse Haulers Waste Removal, Inc.*, No. 25-cv-1080 (ECC/MJK), 2026 WL 1707603 (N.D.N.Y. June 12, 2026).